UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GARRY TEIXEIRA, *individually and as guardian on behalf of Jane Doe and John Doe*,

    Plaintiff,

v.

PRINCE GEORGE'S COUNTY BOARD OF EDUCATION,
LAKEISHA STROTHER,
*in her official capacity and individual capacity*, and
JANE/JOHN DOES,

    Defendants.

Civil Action No. 25-1420-TDC

## MEMORANDUM OPINION

Plaintiff Garry Teixeira has filed this action individually and on behalf of his minor children, Jane Doe and John Doe, against Defendants Prince George's County Board of Education ("the Board"), which operates the Prince George's County Public Schools ("PGCPS"); Principal Lakeisha Strother of Kettering Middle School ("KMS"), a PGCPS school located in Upper Marlboro, Maryland; and Jane and John Does consisting of other PGCPS personnel, based on a series of incidents in which his children were subjected to bullying at KMS and on the school bus. Teixeira alleges a deprivation of constitutional rights by Strother pursuant to 42 U.S.C. § 1983, as well as state constitutional and common law claims against Defendants. Defendants have filed a Motion to Dismiss the Amended Complaint, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts alleged in the Amended Complaint are accepted as true for purposes of resolving the Motion to Dismiss.

Plaintiff Garry Teixeira is the father of John Doe, a 15-year-old boy, and Jane Doe, a 13-year-old girl, who were both students at KMS at the time of the relevant events. The Amended Complaint describes at least 12 incidents of bullying against John Doe, Jane Doe, or both between October 2021 and September 2023.

### I. Bullying Incidents

#### A. John Doe

On October 6, 2021, a "known bully" teased John Doe in a class at KMS and then charged at him before being restrained by the teacher, Mr. Mello. Am. Compl. ¶ 51, ECF No. 14. On October 7, 2021, the same bully punched John Doe in the face after John Doe told him to stop punching and threatening other students. Although the assault occurred in the presence of a KMS teacher, Mr. Friend, the teacher denied seeing the punch. After a cursory investigation that did not include viewing surveillance video, KMS concluded that there was no evidence of the punch, but once the video was viewed at Teixeira's request, it was confirmed that the bully had in fact punched John Doe. That same day, Teixeira formally reported this incident using a PGCPS Bullying, Harassment or Intimidation Reporting Form ("Bullying Reporting Form"). In response, a KMS employee named Ms. Sanchez called Teixeira to acknowledge the complaint, but he was never told of the final disposition of the matter. On October 11, 2021, Teixeira reported the October 6, 2021 incident using a Bullying Reporting Form and was told by Ms. Sanchez that the matter would be investigated, but he received no subsequent follow-up from KMS.

On February 14, 2022, a different student called John Doe "gay" and punched him at least 10 times while in class. *Id.* ¶ 55. The teacher, Mr. De La Pena, witnessed the assault but told John Doe after class that the student who attacked him "acted the way he did because his feelings were hurt" and sent them together to their next class, in which other students made fun of Jon Doe for being beaten up. *Id.* During that class, the student aggressively approached John Doe again but stopped when John Doe pushed him away. Teixeira complained to Ms. Sanchez about the incident, but he was never informed of any action taken, and "John Doe continued to endure humiliation and continued the school year with [the perpetrator] in all of his classes." *Id.* ¶ 56.

On March 14, 2022, on the school bus, two students punched John Doe while a third student recorded a video of the assault on a cell phone. John Doe was "devastated" by the video and "did not want to return to school out of embarrassment." *Id.* ¶ 57. Although Teixeira asked KMS to convene a meeting with the parents of the perpetrators to address the bullying, KMS refused to do so.

**B.    Jane Doe**

On September 27, 2022, Jane Doe, then a sixth grader, was on a school bus when a male student insulted her by calling her a "Female 2.0" and slapped, punched, and kicked her. *Id.* ¶ 23. The attacking student and another student, who was one of the students who had hit John Doe on March 14, 2022, then destroyed items in her purse, including menstrual pads, and threw the purse out of the window. The next day, on September 28, 2022, Jane Doe, while on the school bus, was ridiculed, harassed, and threatened by a different student about the September 27 incident. On September 29, 2022, Teixeira reported these two incidents using a Bullying Reporting Form. In response, he received a call from a KMS employee named Ms. Tolbert who told him that there

would be an investigation, but he received no further information about any investigation or disposition of the incident.

On October 25, 2022, while on the school bus, the same student who had bullied Jane Doe on September 28 threatened to beat her up, called her ugly, and ridiculed her afro by calling it an "ugly bush." *Id.* ¶ 26. Jane Doe returned home crying. The same day, Teixeira filed a Bullying Reporting Form about this incident, received another call from Ms. Tolbert promising an investigation, but again received no other update from the school about its response to the incident.

Approximately one week after this incident, on November 3, 2022, Jane Doe, "suffering emotional distress" and "out of embarrassment by many weeks of bullying, . . . cut herself in gym class in KMS in an attempt to commit suicide." *Id.* ¶ 28. KMS staff informed Teixeira that his daughter was in the nurse's office with the school counselor and called the Prince George's County Emergency Psychiatric Mobile Unit, but they did not permit Teixeira to see Jane Doe, would not inform him of the hospital to which she was sent, and later refused to provide him with the records relating to the incident. Instead, KMS staff initiated an investigation against Teixeira by Child Protective Services, which later ruled out misconduct on his part. Following this incident, Jane Doe stayed for seven days in the Children's Hospital Emergency Psychiatric Unit.

On January 27, 2023, five students, including two who had perpetrated earlier incidents of bullying against Jane Doe or John Doe, threw shoes at Jane Doe on the school bus, but the bus driver did not intervene or report the incident. On January 29, 2023, Teixeira reported this incident through a Bullying Reporting Form, but once again received only a call from Ms. Tolbert stating that an investigation would take place and was never informed of any disposition.

John Doe witnessed the bullying of Jane Doe on the school bus on September 27, 2022, October 25, 2022, and January 27, 2023, but he was unable to protect his sister, in part because of

the anxiety he suffered from being previously bullied himself. John Doe did, however, report the October 25, 2022 and January 27, 2023 incidents to the bus driver. Despite the bus driver's inaction during these bullying incidents as well as a separate fight on the bus witnessed by John Doe and Jane Doe, the bus driver was rehired to drive the same route for the 2023–2024 school year.

On March 9, 2023, another student slapped and attempted to kick Jane Doe during a Chinese class at KMS. A KMS employee, Mr. Hall, investigated the incident by interviewing witnesses and confirmed that Jane Doe had been physically attacked, but Teixeira was not informed of this incident. Three days later, on March 12, 2023, Teixeira reported this incident using a Bullying Reporting Form, but he again received the same response from Ms. Tolbert promising an investigation but providing no further updates.

On March 28, 2023, an eighth grader approached Jane Doe in the KMS cafeteria, slapped, punched, and kicked her, and "dragged her by the hair across the cafeteria floor." *Id.* ¶ 41. After three minutes without adult intervention, Mr. Hall stopped the attack "while other . . . staff just stood there and looked." *Id.* Meanwhile, students used their phones to record videos of the attack, which they later posted publicly on Instagram. The eighth-grade student who assaulted Jane Doe received a two-day suspension, but although surveillance video showed the students who filmed the attack and posted the videos, no disciplinary action was taken against them. John Doe, who witnessed the assault but did not initially know that his sister was the victim, was taunted over the next several days by students who "smirked and made commentary, sometimes while flashing the footage [on] their cell phones showing the assault on his little sister." *Id.* ¶ 63. On the day of this incident, Ms. Tolbert called Teixeira and informed him that Jane Doe had hit back in self-defense but was not in trouble. In fact, Jane Doe had not hit back but was nevertheless placed on an in-

school suspension after the incident. Jane Doe was later treated at an urgent care facility for bruising and soreness. The day after the assault, on March 29, 2023, Teixeira used the Bullying Reporting Form to report the incident. In response, Ms. Tolbert called him to tell him that KMS would investigate, but Teixeira received no further updates.

Two weeks later, on April 12, 2023, the eighth-grade student who assaulted Jane Doe in the cafeteria on March 28 approached her in the cafeteria again and taunted her about the prior assault. The same day, Teixeira reported the April 12 incident using the Bullying Reporting Form. In response, Ms. Tolbert emailed Teixeira and stated that she "met with the student to discuss the incident," but Teixeira received no other communication regarding the complaint or the incident. *Id.* ¶ 49.

On September 21, 2023, during the next school year, a student in Jane Doe's Chinese class, who had previously harassed and threatened Jane Doe, punched her twice and threw her to the ground. When the teacher, Ms. Houng, failed to intervene, Jane Doe responded in self-defense while on the ground but was later punished for engaging in a fight.

## II.   Procedural History

In June 2023, Teixeira filed a notice of claims relating to the bullying incidents with the Board and the Prince George's County Attorney pursuant to the Local Government Tort Claims Act, which requires a claimant bringing a damages action against a local government or its employees to give written notice within one year after the injury. Md. Code Ann., Cts. & Jud. Proc. § 5–304 (LexisNexis 2020). After more than six months elapsed without resolution of those claims, Teixeira filed the original Complaint in this case in the Circuit Court for Prince George's County on March 26, 2025.

After Defendants removed the case to this Court, Teixeira filed the presently operative Amended Complaint in which he generally asserts that Defendants had "direct reports and observations of bullying" and "evidence of the danger," but they "conducted no meaningful investigation, developed[] or implemented no plans, made no referrals to local law enforcement, initiated no referrals to the juvenile judicial system," and generally "made no efforts to take any meaningful action reasonably calculated" to end the bullying, protect Jane and John Doe, or "prohibit the students who were bullying them" from having "ongoing access to" them and "from having access to electronics that facilitated bullying." Am. Compl. ¶ 15. Teixeira also alleges that Defendants failed to train staff in preventing bullying, destroyed evidence of the incidents, and failed to preserve records relating to them. These failures occurred despite Defendants' policies that "affirm that all students have a right to be free of bullying, harassment, or intimidation" and "prohibit[] bullying, harassment, and intimidation on Prince George's County Public Schools' property." Id. ¶ 16. Teixeira also alleges that, in addition to physical injuries, the bullying caused his children to suffer "anxiety, depression and suicidal thoughts" that "necessitated therapeutic counseling." Id. ¶¶ 64, 72.

Based on these allegations, Teixeira asserts six claims in the following numbered counts: (1) a claim against Strother under 42 U.S.C. § 1983 for a deprivation of rights protected by the Fourth and Fourteenth Amendments to the United States Constitution; (2) a claim against the Board and Strother for a violation of Article 24 of the Maryland Declaration of Rights; (3) a claim against the Board and Strother for a violation of Article 26 of the Maryland Declaration of Rights; (4) a claim against the Board for negligent supervision; (5) a claim against the Board and Strother for intentional infliction of emotional distress; and (6) a claim against the Board and Strother for invasion of privacy based on intrusion upon seclusion. Teixeira seeks compensatory and punitive

damages, as well as injunctive relief compelling Defendants to "institute a formal, meaningful, transparent and timely process to investigate claims of bullying, harassment and assault of students by other students." *Id.* ¶ 85.

## DISCUSSION

In their Motion, Defendants seek dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Teixeira has failed to allege facts supporting plausible claims for relief on any of the counts.

### I. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II. 42 U.S.C. § 1983

In Count 1, Teixeira alleges a claim under 42 U.S.C. § 1983 against Strother for depriving his children of rights protected by the Fourth and Fourteenth Amendments to the United States Constitution, specifically their rights "to bodily integrity and personal security," "to be free from a deprivation of liberty without due process of law," "to be free from physical abuse, harassment and bullying," and "to be free from unreasonable searches and seizures." Am. Compl. ¶¶ 78–81.

Section 1983 provides that a person who "under color of" law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must demonstrate that: (1) the defendant violated a right secured by the United States Constitution or federal law; and (2) the act or omission causing the violation of a right was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Strother, as an employee of a public school district, acts under color of state law and may therefore be held liable in her individual capacity pursuant to § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

### A.   Fourth Amendment

Teixeira's claim based on the Fourth Amendment, which protects individuals against unreasonable searches and seizures by law enforcement or other government personnel, cannot succeed. *See* U.S. Const. amend. IV. The Amended Complaint does not allege that Strother, or any other KMS personnel, conducted a search or seizure of John or Jane Doe or their property. Although it alleges that students seized Jane Doe's possessions on September 27, 2022, such actions do not implicate the Fourth Amendment because students are not state actors. *See United States v. Jones*, 31 F.3d 1304, 1309 (4th Cir. 1994) (stating that "the security provided by the Fourth Amendment against unreasonable search and seizure applies solely to government intrusions") (citing *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921)). The § 1983 claim based on a Fourth Amendment violation will therefore be dismissed.

### B.     Fourteenth Amendment

In the § 1983 claim, Teixeira generally asserts a "deprivation of liberty without due process of law," Am. Compl. ¶ 79, based on Strother's failure to prevent and deter the bullying of John Doe and Jane Doe by other students and the application of policies that resulted in a failure to investigate bullying incidents and thus allowed the bullying to continue. Where Teixeira alleges that Strother thus "deprived Plaintiffs of their rights under the Fourteenth Amendment to bodily integrity and personal security," *id.* ¶ 78, the § 1983 claim is properly construed as a claim for a deprivation of substantive due process under the Fourteenth Amendment to the Constitution. *See Doe v. Rosa*, 795 F.3d 429, 436–37 (4th Cir. 2015) (stating that the Fourteenth Amendment protects the "substantive due process right against state actor conduct that deprives an individual of bodily integrity").

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the United States Supreme Court stated that the Due Process Clause of the Fourteenth Amendment protects "the people from the State" and does not "ensure that the State protect[s] them from each other." *Id.* at 196. Accordingly, the Due Process Clause confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *Id.* Based on these principles, the Court held that where a local department of social services received complaints that a boy was being abused by his father but did not act to remove the boy from his father's custody, and the father then severely beat the boy and inflicted permanent brain damage, the boy's substantive due process rights were not violated by the state because "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 193, 197. Accordingly, the Due Process Clause generally "does not require governmental actors to affirmatively protect life,

liberty, or property against intrusion by private third parties" and instead "works only as a negative prohibition on state action." *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995) (en banc) (citing *DeShaney*, 489 U.S. at 195–96).

There are limited exceptions to this rule. The state has an affirmative duty under the Due Process Clause to protect an individual from the deprivation of rights by a third party when: (1) the state has a "special relationship" with the plaintiff consisting of confinement in state custody against that person's will, such that the state has assumed responsibility for the person's safety and well-being; or (2) the state "creates the dangerous situation that resulted in a victim's injury." *Doe*, 795 F.3d at 437–38 (quoting *Pinder*, 54 F.3d at 1177).

The first scenario does not apply here. Although John Doe and Jane Doe were at school, and schoolchildren could fairly be deemed to be in circumstances under which the state has responsibility for their safety and well-being, the United States Court of Appeals for the Fourth Circuit has held that this exception does not apply to children at school because they are "not in physical custody" akin to incarcerated or institutionalized persons. *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001) (citing *Pinder*, 54 F.3d at 1175); *see also, e.g.*, *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1372 (3d Cir. 1992) (en banc). Rather, the Fourth Circuit has held that some kind of "confinement" of the plaintiff, such as "incarceration, institutionalization, or the like," is required under this exception. *Pinder*, 54 F.3d at 1175.

The second scenario is the "state-created danger" exception to the general rule that the state has no duty to protect individuals from the actions of third parties. *Doe*, 795 F.3d at 438. To prevail on such a theory, a plaintiff "must show that the state actor created or increased the risk of

private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Id.* at 439. The requirement of an affirmative act that directly created the danger to the plaintiff is strict and "should not extend 'beyond the context of immediate interactions between the [state actor] and the plaintiff.'" *Id.* at 441 (quoting *Pinder*, 54 F.3d at 1176 n.*). The Fourth Circuit has repeatedly emphasized this essential requirement and has cautioned that "courts should resist the temptation" to let conduct that is truly "inaction . . . be artfully recharacterized as action." *Id.* (quoting *Pinder*, 54 F.3d at 1176 n.*); *see Graves v. Lioi*, 930 F.3d 307, 319–20 (4th Cir. 2019); *Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 147–48 (4th Cir. 2021); *Burns-Fisher v. Romero-Lehrer*, 57 F.4th 421, 425 (4th Cir. 2023).

Under this standard, the Fourth Circuit has held that the affirmative act requirement was not met, for example, where the director of a state-run summer camp, who was informed of sexual abuse by a camp counselor, failed to alert the police to the abuse, violated policies in doing so, and allegedly engaged in a cover-up, and children were then subjected to additional acts of abuse. *Doe*, 795 F.3d at 441–42. Similarly, the Fourth Circuit has held that when a principal who allegedly had knowledge of a student's prior acts of violence failed to prevent that student from assaulting a teacher in class, there was no affirmative act that caused or increased the danger to the teacher such that there was no substantive due process violation. *Burns-Fisher*, 57 F.4th at 423, 425.

Here, in support of the § 1983 claim against Strother, Teixeira alleges that she failed to prevent students from bullying his children, failed to impose long-term suspensions or other consequences on the bullies, permitted the bullies to remain in classrooms and on the school bus with his children, allowed students to carry cell phones, failed to prevent them from uploading videos to social media, and failed to investigate the complaints he submitted about the bullying incidents. KMS's alleged inaction in response to numerous incidents of bullying, even after a

suicide attempt and a publicized attack in the school cafeteria, and in the face of repeated reports by Teixeira, is deeply concerning. The Court recognizes that, based on the allegations, there is a fair argument that KMS's repeated failures to investigate and take steps to curtail the bullying contributed to the danger posed to John Doe and Jane Doe. Nevertheless, where the allegations do not describe affirmative acts that created or increased the danger to the children as required by Fourth Circuit precedent to support a Fourteenth Amendment substantive due process claim, and where the Fourth Circuit has repeatedly cautioned district courts not to recharacterize inaction as affirmative acts, the Court finds that Fourth Circuit precedent precludes a finding that Teixeira has stated a valid § 1983 claim based on the state-created danger doctrine. *See, e.g., Doe*, 795 F.3d at 441–42. The Court will therefore dismiss the § 1983 due process claim without prejudice. To the extent that Teixeira identifies facts that demonstrate affirmative acts that created or increased the danger to John Doe and Jane Doe, whether through discovery on other counts or otherwise, he may seek leave to amend the complaint.

### III.    State Constitutional Claims

In Count 2, Teixeira alleges a violation of Article 24 of the Maryland Declaration of Rights by the Board and Strother, and in Count 3 he alleges that the same Defendants violated Article 26 of the Declaration of Rights. Articles 24 and 26 protect, respectively, the right to due process and the right to be free from unreasonable searches and seizures. Md. Const. Decl. of Rts. arts. 24, 26. Courts generally interpret Article 24 as coextensive with the Due Process Clause and Article 26 as coextensive with the Fourth Amendment. *See Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (Md. 1980) (stating that "Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning"); *Scott v. State*, 782 A.2d 862, 873 & n.2 (Md. 2001) (stating that Article 26 is "construe[d] . . . in conformance with

constructions given to the Fourth Amendment by the [United States] Supreme Court"). Accordingly, for the same reasons discussed in concluding that the Amended Complaint does not state a claim for a violation of either the Due Process Clause or the Fourth Amendment, Counts 2 and 3 will be dismissed without prejudice.

IV.     **Negligent Supervision**

In Count 4, Teixeira alleges a claim against the Board for negligent supervision. Under Maryland law, a claim for negligent supervision is based on the principle that an employer must "use reasonable care to select employees competent and fit for the work assigned to them and . . . refrain from retaining the services of an unfit employee," and that when "an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1237 (Md. 2004) (quoting *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)). A cause of action for negligent supervision contains five elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising or retaining the employee as the proximate cause of plaintiff's injuries." *Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125, 1160 (Md. Ct. Spec. App. 2023) (citation omitted). Here, there is no dispute that an employment relationship existed between the Board and KMS personnel, including Strother.

In *Gambrill v. Board of Education of Dorchester County*, 281 A.3d 876 (Md. 2022), the Supreme Court of Maryland recognized a cause of action by parents against a school board for negligent supervision of employees arising from a failure to prevent or address bullying and physical assaults of their daughter by other students. *Id.* at 899. In that instance, the plaintiffs'

14

daughter, S., was harassed and physically attacked in a series of bullying incidents over the course of the school year by at least five other students at her middle school, which resulted in serious injuries, including concussions. *Id.* at 881–84. Two such incidents occurred in the presence of substitute teachers who did not intervene and who the principal admitted could not "control the classroom," and a third incident occurred after the assistant principal left S. alone in the nurse's office with a student who had previously attacked her. *Id.* at 882–83. The plaintiffs reported the incidents to the principal and other school officials, who took some actions in response, including issuing suspensions to bullies, but not other actions requested by the plaintiffs, like further investigating certain incidents or initially permitting S. to change lockers to move away from a bully. *Id.* at 882–84.

Applying general principles of negligence, the court found that the school had a duty "to exercise reasonable care to protect a pupil from harm." *Id.* at 899–900 (quoting *Lunsford v. Bd. of Educ. of Prince George's Cnty.*, 374 A.2d 1162, 1168 (Md. 1977)). As to whether the duty of care was breached, the court focused on whether the bullying that caused harm to S. was reasonably foreseeable to school officials, *id.* at 900, such that S.'s injuries were not "highly extraordinary and unforeseeable" consequences of the defendant's allegedly tortious conduct, *id.* at 902. It concluded that there was sufficient evidence to support such a finding where there were repeated incidents of bullying and several instances of action or conspicuous inaction by school personnel over a period of many months that increased the risk of harm to S., such as the school's initial denial of the plaintiffs' request to change S.'s assigned locker, the failures by two substitute teachers to intervene in bullying incidents occurring in their classrooms, and the assistant principal's decision to leave S. alone with a bully in the nurse's office. *Id.* at 904–05.

Here, as in *Gambrill*, the alleged bullying was not an isolated incident. Teixeira has alleged that his children were subjected to repeated incidents of bullying, including at times by the same perpetrators, that he filed numerous complaints about those incidents, and that those complaints did not result in adequate investigations or any measures that prevented additional bullying. For example, he alleges that after he complained that Jane Doe was subjected to bullying on the school bus, which was equipped with cameras, the perpetrator was allowed to continue to ride the same bus, and additional bullying ensued, including by the same student. He therefore has alleged sufficient facts to demonstrate that the additional incidents of bullying on the school bus were reasonably foreseeable. He has also alleged multiple incidents in which teachers or other KMS staff were present at the time of bullying incidents but stood by and took no action when John Doe or Jane Doe was physically assaulted by another student. Such incidents include the March 28, 2023 physical assault in the school cafeteria of Jane Doe, then a sixth grader, by an eighth grader, which "went on for about 3 minutes before Mr. Hall approached and pulled the 8th grader off of Jane Doe, while other [KMS] staff just stood there and looked," Am. Compl. ¶ 41, and the September 21, 2023 incident in Chinese class during which Jane Doe was punched and thrown to the floor while her teacher failed to intervene. *See Gambrill*, 281 A.3d at 904–05 (relying in part on allegations that the plaintiffs' daughter was twice assaulted in the presence of substitute teachers, including once when the assault lasted over a minute, and that the teachers failed to intervene).

Based on these allegations, the inaction by KMS staff under a duty to protect students could be fairly deemed to be incompetent performance and to have caused the injuries to John Doe and Jane Doe. Further, where Teixeira has asserted that he filed formal complaints about nine of these incidents, there is a reasonable inference that Strother and other PGCPS senior officials were made

aware of the KMS personnel's failure to prevent, meaningfully investigate, or otherwise address the bullying, such that the Board's failure to supervise its personnel in relation to the bullying could be deemed to be a proximate cause of their injuries. Accordingly, the Court finds that Teixeira has stated a plausible claim of negligent supervision. The Motion to Dismiss will be denied as to Count 4.

## V.  Intentional Infliction of Emotional Distress

In Count 5, Teixeira alleges a claim of intentional infliction of emotional distress against the Board and Strother. Under Maryland law, the tort of intentional infliction of emotional distress has four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977); *see McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 286 (D. Md. 2020). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614. Teixeira asserts that the Board and Strother intentionally inflicted emotional distress through their inaction in relation to the bullying, particularly by allowing students to film the incident in which an eighth grader assaulted Jane Doe in the school cafeteria and then post the videos on Instagram without sanction.

Defendants contest that the failure to address such student behavior constitutes extreme or outrageous conduct on the ground that Strother "does not have the authority, much less the duty, to police students' use of their personal cell phones." Mot. Dismiss at 17, ECF No. 15-1. The Court is troubled by Defendants' bewildering assertion that a middle school principal has no role to play in preventing such incidents and is powerless to direct students to refrain from recording

activity occurring within a school building during the school day. Nevertheless, although the students' conduct of publicly posting videos of the bullying incident may well constitute intentional infliction of emotional distress by those individuals, the Court does not find that the secondary inaction and omissions of KMS staff members in failing to prevent such conduct constituted extreme, "utterly intolerable" conduct that rises to the level of intentional infliction of emotional distress by them, or that in failing to act, they were acting intentionally or recklessly. *See Harris*, 380 A.2d at 614. Such failures are best addressed through the negligent supervision claim in Count 4. Count 5 will therefore be dismissed.

## VI. Invasion of Privacy

Finally, in Count 6, Teixeira alleges a claim of invasion of privacy based on intrusion upon seclusion. Under Maryland law, this tort occurs when there has been an intentional intrusion "into a private place or [an] invasion of a private seclusion" that "would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585–86 (Md. Ct. Spec. App. 2000) (quoting *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116 (Md. Ct. Spec. App. 1986)). However, "[t]here is no liability for observing [a person] in public places since he is not then in seclusion." *Id.* (quoting *Pemberton*, 502 A.2d at 1116–17).

In the Amended Complaint, Teixeira alleges that the intrusion upon seclusion occurred when Strother and other KMS staff "allowed . . . students to record videos and take pictures" of Jane Doe "being violently assaulted and dragged along in the school cafeteria" in the presence of school staff, and that one of those videos "was uploaded to Instagram where anyone in the world can watch." Am. Compl. ¶¶ 121–122. While the students' conduct and KMS personnel's failure to prevent it may arguably be highly offensive to a reasonable person, these events cannot form

the basis for a claim of intrusion upon seclusion because the school cafeteria in which Jane Doe was assaulted and filmed was not a private place. Count 6 will therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. It will be granted in that Counts 1, 2, 3, 5, and 6 will be dismissed without prejudice. It will be otherwise denied. A separate Order shall issue.

Date: December 31, 2025

THEODORE D. CHUANG
United States District Judge